**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| DENISE JACKSON, | Case No. 1:10-cv-753 |
| Plaintiff, | Beckwith, J.<br>Bowman, M.J. |
| v. | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**REPORT AND RECOMMENDATION**

Plaintiff Denise Jackson filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On July 20, 2007, Plaintiff filed an application for Disability Insurance Benefits (DIB) alleging a disability onset date of February 7, 2007, due to problems related to cardiomyopathy. (Tr. 100-07, 120). She was born in 1968 and 40 years old at the time she filed her application for DIB. *Id.* After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). (Tr. 69). On October 6, 2009, Plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Christopher McNeil. (Tr. 4-50). A vocational expert (VE), Dr. Donald Shrey, also appeared and testified at the hearing.

1

On November 19, 2009, the ALJ entered his decision denying Plaintiff's DIB application. (Tr. 56-63). The Appeals Council denied Plaintiff's request for review. (Tr. 1-3). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since February 7, 2007, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: cardiomyopathy (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

   ……………………..

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). Specifically, the claimant can lift, carry, push and/or pull up to 10 pounds frequently, but should not left [sic] more than 20 pounds at a time. She is able to sit 2 hours in an 8-hour workday and stand/walk 6 hours in an 8-hour workday. Moreover, the claimant can occasionally stoop or climb stairs and /or ramps, but should never climb ropes, ladders and/or scaffolds.

   ……………………..

6. The claimant is capable of performing past relevant work as an administrative assistant and truck dispatcher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

   ……………………..

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 7, 2007 through the date of this decision (20 CFR 404.1520(f)).

(Tr. 58-63).

Thus, the ALJ determined that Plaintiff was not under disability, as defined in the Social Security Regulations, and therefore not entitled to DIB.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if

substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at

least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors**

On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) failing to properly consider Plaintiff's obesity; 2) failing to consider the side effects of her medication; 3) improperly relying on the opinions of the non-examining physicians in formulating her residual functional capacity (RFC); 4) failing to obtain testimony from a medical expert in order to address the severity of her impairments; and 5) improperly evaluating her testimony relating to her activities of daily living. Upon careful review and for the reasons that follow, the undersigned finds Plaintiff's assignments of error should be overruled.

*1. Consideration of Obesity*

Plaintiff first assignment of error asserts that the ALJ failed to consider the effects of Plaintiff's obesity on her ability to work in violation of Social Security Ruling 02-1p. Plaintiff also contends the ALJ erred in failing to find that her obesity was a severe impairment. Each contention will be addressed in turn.

*A. SSR 02-1p*

SSR 02-1p provides that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. Adjudicators must "consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id*. Plaintiff argues that the ALJ failed to discuss whether her obesity caused and/or contributed to

her complaints of fatigue, and if so, how the fatigue and obesity affected her ability to perform work-related activities. Plaintiff's contention lack merit.

Here, the ALJ noted that Plaintiff was considered obese at a height of 69 inches, a weight of 257 pounds, and a body mass index over 40 present. (Tr. 59). In finding that Plaintiff did not have a Listing level impairment (or combination of impairments), the ALJ's decision indicates that he expressly considered SSR 02-1p and the overall impact of Plaintiff's obesity in relation to her other medical conditions. (Tr. 59). The ALJ further noted that SSR 02-1p also provides that if obesity is of such a level that it results in an inability to ambulate effectively, as defined in sections 1.00B2b or 101.00B2b of the listings, it may substitute for the major dysfunction of a joint(s) required by listings 1.02A or 101.02A. As the record did not indicate that Plaintiff "was unable to ambulate effectively at any material time due to her obesity" the ALJ properly concluded that Plaintiff impairments, including her obesity, did not meet the requirements of such Listings. *Id.*

Plaintiff's contention that the ALJ should have determined whether her obesity contributed to her complaints of fatigue, and if so, what impact her obesity and fatigue had on her ability to perform work related activities is also not well-taken. Plaintiff, not the ALJ, bears the burden of presenting sufficient evidence that she suffers from an impairment or combination of impairments that prevents her from performing work activity. 42 U.S.C. § 423(d)(1)(A). Plaintiff does not provide any evidence or argument that her obesity contributed to her complaints of fatigue, nor does she state what additional limitations the ALJ should have imposed as a result of obesity.

To the contrary, the evidence in this cases establishes that the ALJ properly considered and evaluated Plaintiff's obesity and fatigue. The ALJ noted Plaintiff's

complaints of fatigue, but found that her complaints regarding the severity of her symptoms and limitations were inconsistent with the evidence of record and her daily activities. Notably, Plaintiff reported doing laundry, light cleaning, putting dishes away, grocery shopping, cooking and going out to dinner. (Tr. 61). Plaintiff reported less fatigue after the placement of her pacemaker in February 2008, and acknowledged that she was walking up to twenty minutes a day, three times a week. (*See* Tr. 399-400, 410, 435-440). The record further indicates that Plaintiff reported that her fatigue was the result of her medications and not her obesity. (Tr. 435-36). Therefore, the undersigned finds that the ALJ properly considered Plaintiff's obesity in accordance with SSR 02-1p.

B. *Severity of Obesity*

Plaintiff further asserts that the presence of her obesity, standing alone, required the ALJ to find that her obesity is a severe impairment. Such is not the case. A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c).[1] In the physical context, this means a significant limitation upon a plaintiff's ability to walk, stand, sit, lift, push, pull, reach, carry or handle. 20 C.F.R. §§ 404.1521(b)(1), 416.921(b)(1). Here, Plaintiff fails to argue that her obesity results in any functional limitations significantly limiting her ability to perform basic work activities. To the contrary, the record shows that Plaintiff's physical examinations yielded normal results, she had full muscle strength, no swelling or other problems with her joints, and was

---

[1] Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions, the capacity for seeing and hearing, and the ability to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b).

7

never prescribed a cane. (Tr. 212-213, 364, 367, 372, 374). The state agency physicians who reviewed Plaintiff's file each concluded that Plaintiff could stand and/or walk for about 6 hours of an 8-hour work day. (Tr. 350, 386). In light of the foregoing, the ALJ properly concluded "there is no evidence that her obesity significantly impacts her ability to engage in basic work activities." (Tr. 59). The ALJ's finding in this regard is substantially supported and should not be disturbed.

*2. Consideration of Plaintiff's Medication*

Plaintiff's second assignment of error asserts that the ALJ failed to consider the impact of the side effects of Plaintiff's medication on her ability to perform gainful activity in accordance with SSR 96-7p, which provides a list of factors the ALJ must consider in evaluating Plaintiff's credibility, including the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms.[2] At the administrative hearing, Plaintiff testified that her medications cause fatigue and also cause her to go to the restroom frequently. (Tr. 18, 21, 38-40). Plaintiff asserts that "there is no evidence in the record to refute Plaintiff's testimony regarding the side effects of the medication." (Doc. 8 at 4). The problem with Plaintiff's assertion is two-fold. First, as more fully explained below, Plaintiff's testimony relating to the side effects of her medication is not supported by the evidence or record.

---

[2] The full list of factors include: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p

8

Second, as detailed above, at this stage in the sequential evaluation, Plaintiff bears the burden of establishing that her impairments are disabling  - the burden is not on the Commissioner to refute Plaintiff's testimony.

The ALJ's decision clearly indicates that he properly considered the side effects of Plaintiff's medication in light of the evidence of record.  The ALJ's noted that Plaintiff "testified that side effects from her medication cause fatigue and excessive urination," however, he concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her impairments were not fully credible because they were not supported by the record evidence.  (Tr. 60-61).[3]  As noted by the Commissioner, there is only one instance in the entire medical record where Plaintiff complained of fatigue from medication after her pacemaker was implanted.  (Tr. 60, 435).  The medication was adjusted during that visit, and the record is devoid of any other such complaints to doctors after her pacemaker surgery.  (*See* Tr. 436).  Additionally, Plaintiff testified that she never told her physicians that her medication caused her to urinate frequently or asked for an alternative medication.  (Tr. 21-22).

Based on the foregoing, the undersigned finds that the ALJ's credibility analysis properly considered the side effects of Plaintiff's medication.  Accordingly, Plaintiff's second assignment of error should be overruled.

---

[3]  Plaintiff also asserts that the ALJ's brief notation of these side-effects in his decision does not indicate that he sufficiently considered the impact of her side effects.  Contrary to Plaintiff's assertion, the Sixth Circuit has noted that "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (internal quotation marks omitted); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand.").  Here, albeit the brief, the ALJ's decision indicates that he properly considered this evidence.

9

### 3. Weight assigned to the State Agency Physicians

Plaintiff argues next that the ALJ erred in relying on the opinions of the state agency reviewing physicians, Cindi Hill, M.D. and Walter Holbrook, M.D., in formulating Plaintiff's RFC. Specifically, Plaintiff maintains that neither physician examined Plaintiff nor did they review any of the medical evidence submitted after the dates of their respective reviews. Plaintiff's assertions are unavailing.

In weighing differing medical opinion evidence, an ALJ considers the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: "(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant." *Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. 2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

More weight is generally given to an opinion offered by a medical source who has examined the claimant over an opinion offered by a medical source who has not examined the claimant. 20 C.F.R. § 404.1527(d)(1). More weight is given to opinions supported by "relevant evidence" such as "medical signs and laboratory findings[.]" 20 C.F.R. § 404.1527(d)(3). Further, more weight is given to those medical opinions that are "more consistent ... with the record as a whole[.]" 20 C.F.R. § 404.1527(d)(3). After assessing the weight accorded medical source evidence, ultimately, an ALJ can properly rely on the conclusions of a nonexamining, record reviewing physician to support an RFC assessment. *See Sullivan v. Comm'r of Soc. Sec.*, No. 1:07cv331, 2009 WL 648597, *13 (S.D. Ohio Mar.11, 2009). Such is permissible "because the

10

Commissioner may view nonexamining sources 'as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.' " *Id.* (citing Social Security Ruling 96-6p).  Opinions offered by nonexamining physicians "are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Id.* (citing 20 C.F.R. § 404.1572(d), (f)).  Thus, "under some circumstances, [opinions from nonexamining doctors can] be given significant weight.*"  Linton v. Astrue*, No. 3:07cv00469, 2009 WL 540679, *8 (S.D. Ohio Mar 2, 2009).

In this case, no treating source provided an assessment relating to Plaintiff's work-related limitations or opined that Plaintiff is disabled.  However, the record contains two assessments by state agency reviewing physicians, who both found that Plaintiff is capable of sustained work activity.  Notably, in February 2007, Dr. Holbrook, reviewed Plaintiff's file and concluded that Plaintiff was able to lift/carry/push/pull 50 pounds occasionally and 25 pounds frequently; stand/walk about 6 hours in an 8-hour work day; and sit about 6 hours in an 8-hour work day.  (Tr. 350).  Dr. Holbrook's findings were based on Plaintiff's June 2007 test showing her EF at 42%, a February 2007 cardiac exam that was normal, a February 2007 stress test that demonstrated Plaintiff's ischemia was reversible, and normal cardiac exams in August 2007 showing clean coronary arteries with no edema.  (Tr. 350).[4]

Thereafter, in February 2008, Dr. Hill review the evidence of record and determined that Plaintiff was able to lift/carry/push/pull 20 pounds occasionally and 10

---

[4] As noted by the Commissioner, an ejection fracture ("EF") measures how much blood is being pumped out of the heart with each contraction.  *See* "Understanding Your Ejection Fraction." The Cleveland Clinic, http://my.clevelandclinic.org/heart/disorders/heartfailure/ejectionfraction.aspx. An EF between 50%-70% is considered normal, 36%-49% is below normal, and an EF of 35% or less indicates an increased risk of life-threatening irregular heartbeats.  *Id.*

pounds frequently; stand/walk about 6 hours in an 8-hour work day; and sit about 6 hours in an 8-hour work day. (Tr. 386). Dr. Hill concluded that Plaintiff's "condition limits her, but does not prevent her from engaging in light work activities." (Tr. 387-390). Dr. Hill based this conclusion on Plaintiff's tests showing EF ranging from 28-42%, an echocardiogram within normal limits, a February 2007 stress test showing Plaintiff's ischemia was reversible, and normal cardiac exams in August 2007 showing clean coronary arteries with no edema. (Tr. 386). Dr. Hill also noted that Plaintiff's physical examinations were normal but for her obesity, and that an ICD implant was recommended. (Tr. 387).

The ALJ determined that Dr. Hill's and Dr. Holbrook's findings were consistent with the clinical signs and diagnostic testing as well as Plaintiff's own description of her daily activities. The ALJ found that the evidence received into the record at the hearing level did not provide any new and material information that would call into question Dr. Hill's or Dr. Holbrook's findings. *Id.* The ALJ also noted that no treating physician found Plaintiff to be disabled or provided an assessment of Plaintiff' functional limitations. Thus, based on the record before him, the ALJ afforded "great weight" to the assessments by Dr. Hill and Dr. Holbrook. Although Plaintiff argues that Dr. Hill and Dr. Holbrook's assessments were not based on a complete case record, she fails to point to any later-acquired evidence to dispute their findings. Notably, the record establishes that Plaintiff's health improved greatly after the placement of a pacemaker on February 21, 2008. (Tr. 393-395).

In light of the above, the undersigned finds that substantial evidence supports the ALJ's decision to afford great weight to the assessments of Dr. Hill and Dr. Holbrook,

such assessments were supported by sufficient objective evidence and were consistent with the medical evidence as a whole.

4. *Need for Medical Expert Testimony*

Plaintiff's fourth assignment of error asserts that the ALJ erred in failing to obtain the testimony of a medical expert to address the severity and resulting limitations of Plaintiff's impairments. Plaintiff argues that the evidence of record establishes that she suffers from cardiomyopathy, left ventricular dysfunction, left bundle branch block, variable ejection fraction levels, chronic systolic heart failure and the implantation of biventricular implantable cardioverter-defibrillator, and therefore, pursuant to the HALLEX,[5] the ALJ should have obtained a medical expert to evaluate the severity of such impairments. (Doc. 8 at 5).

The primary function of a medical expert is to explain, in terms that the ALJ, who is not a medical professional, may understand, the medical terms and findings contained in medical reports in complex cases. *See Richardson v. Perales*, 402 U.S. 389, 408 (1971). The Regulations provide that an ALJ may "ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart." 20 C.F.R. §§ 404 .1527(f)(2)(iii) and 416.927(f)(2)(iii). An ALJ's decision whether a medical expert is necessary, however, is inherently discretionary. *See* HALLEX I-2-5-32-34 (Sept. 28, 2005). Thus, there is no mandate requiring an ALJ to solicit such evidence. *See Simpson v. Comm'r of Soc.*

---

[5] The HALLEX is a Social Security Administration policy manual that provides "guiding principles, procedural guidance and information" to ALJs and other staff members. *Bowie v. Commissioner*, 539 F.3d 395, 397 (6th Cir. 2008). While not binding on the court, the HALLEX offers procedural guidance which may be considered. *Id.* at 399.

13

*Sec.*, 344 F. App'x 181, 189 (6th Cir. 2009) ("20 C.F.R. §§ 404.1527(f)(2)(iii) and 416.927(f)(2)(iii) provide discretion rather than a mandate to the ALJ to decide whether to solicit medical expert testimony ..."). Ultimately, the ALJ is charged with the duty of evaluating the medical evidence on record and determining the claimant's RFC. *See* 20 C.F.R. § 404.154(c).

There is no showing in this case that the use of a medical consultant was necessary. As noted by the Commissioner, the medical record in this matter is complete, straight forward, and clearly establishes that Plaintiff's health improved greatly after her pacemaker surgery in February 2008. (*See* Tr. 399-400, 410, 435-440). No treating physician opined that Plaintiff's impairments prevent her from engaging in work-related activity. To the contrary, Dr. Hill and Dr. Holbrook, both found that Plaintiff's impairments did not prevent her from engaging in gainful employment. Plaintiff does not dispute their findings. Furthermore, Plaintiff does not assert that her medical record was incomplete or provide any reason why a medical expert was necessary.

Accordingly, on this record, it was within the ALJ's discretion, to call or not to call a medical expert. Thus, the ALJ's reasonable exercise of that discretion should not be overturned. For these reasons, the undersigned finds no merit in this assignment of error.

     5. *Consideration of Plaintiff's Daily Activities*

Plaintiff's final assignment of error asserts that the ALJ's credibility analysis mischaracterized Plaintiff's testimony regarding her activities of daily living. Plaintiff argues that her ability to engage in limited activities is not indicative of her ability to perform work on a sustained basis. Again, Plaintiff's assertions are not well-taken.

As a matter of law, the ALJ may consider Plaintiff's household and social activities in evaluating her assertions of pain or limitations. *See Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 532 (6th Cir. 1997); *Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Heston v. Com'r*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

Here, the ALJ reasonably found that Plaintiff's activities of daily living were incompatible with her subjective complaints of disabling pain. (Tr. 61). The ALJ's specifically noted that although Plaintiff's complained of fatigue, she was able to cook, go out to dinner, clean the house, care for pets, drive, and grocery shop. (Tr. 60). Plaintiff argues that ALJ should have provided a more detailed analysis relating to her daily activities, *i.e.* how long or how often she testified that she could perform an activity. However, Plaintiff does not argue, nor does the evidence establish, that the ALJ's findings were in fact erroneous. To the contrary, the record indicates that Plaintiff reported that she was able to make meals or eat out in restaurants, put dishes away, do light cleaning, and feed her dogs. (Tr. 158, 160). Plaintiff also reported that she is able to drive a car, and shop for food, gifts and clothes. (Tr. 160).

The ALJ's decision clearly indicates the he properly considered Plaintiff's testimony, in light of the medical evidence of record. Accordingly, the undersigned finds the ALJ's opinion reflects a comprehensive examination of the record and properly follows the pertinent law and regulations.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                                *s/Stephanie K. Bowman*
                                                Stephanie K. Bowman
                                                United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DENISE JACKSON,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:10-cv-753

Beckwith, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).